IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARLENE KAE SIMMONS, )
)
Plaintiff, )
)
v. ) Civil Action No. 12-145J
)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
Defendant. )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2013, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 16) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications[1] for benefits on September 30, 2008, alleging a disability onset date of January 31, 2007, (later amended to March 7, 2008) due to a number of mental impairments as well as back pain. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on June 8, 2010, at which plaintiff, represented by counsel, appeared and testified. On July 30, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On May 9, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 43 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c) and 416.963(c). She has at least a high school education. Although plaintiff previously worked as a sandwich maker, sales clerk and a cafeteria worker, the ALJ found that plaintiff has no past relevant work because none of those jobs qualified as substantial gainful activity. Nor has plaintiff performed any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that while plaintiff suffers from the severe impairments of obesity, cognitive disorder s/p traumatic brain injury, bipolar disorder, post-traumatic stress disorder, major depressive disorder and anxiety disorder, the medical evidence does not show that plaintiff's impairments, alone or in combination, meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient quarters of coverage to remain insured only through September 30, 2010.

The ALJ also found that plaintiff retains the residual functional capacity to perform medium work but with numerous restrictions accounting for the limiting effects of plaintiff's impairments.[2] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including janitor/cleaner, dishwasher, laundry worker and vehicle washer. Relying on the vocational expert's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] 20 C.F.R. §§404.1520

---

[2] Specifically, plaintiff is limited to simple, routine tasks involving no more than simple, short instructions, simple work-related decisions, few work place changes, and no work at a production-rate pace; is limited to occasional interaction with supervisors and no interaction with the public and coworkers other than incidental contact; and is limited to work that does not require her to read instructions, write reports, or perform math calculations, such as teller or cashier work. (R. 24).

[3] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner

and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ improperly evaluated the medical evidence; (2) the ALJ improperly evaluated plaintiff's credibility; and, (3) the ALJ erred at step 5 by erroneously relying on the vocational expert's response to an incomplete hypothetical. Upon review, this court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence at steps 3 and 5 of the sequential evaluation process. In particular, she disputes the ALJ's analysis of: (1) a medical source statement completed by her treating physician, Dr. Joseph Sabo, from October of 2008, in which Dr. Sabo indicated that plaintiff has "marked" or "extreme" limitations in a number of work-related mental activities (R. 300-301)[4]; and, (2) a report from Frank K. Schmidt, Ph.D., who performed a consultative psychological evaluation in December of 2008, in which he reported that plaintiff has an 85% estimated impairment in social functioning and a 70% estimated

---

of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

[4] Plaintiff also refers to a second opinion from Dr. Sabo set forth in a mental residual functional capacity questionnaire dated March 7, 2011, eight months after the ALJ's decision on July 30, 2010, decision. (R. 539-542). Because this report was not before the ALJ, this court may not consider it in evaluating the ALJ's decision under the substantial evidence standard. Instead, when a claimant proffers evidence in the district court that previously was not presented to the ALJ, the district court's determination of whether to remand to the Commissioner for consideration of that evidence is governed by Sentence 6 of §405(g) of the Act. See Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Sentence 6 permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." See also Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984). "[A] claimant must satisfy all three requirements of Sentence 6 (new, material and good cause) in order to justify a remand." Matthews at 594; Szubak at 833. Here, plaintiff has failed to establish, or even to address, any of the three requirements.

impairment in concentration, persistence and pace. (R. 400-408). Plaintiff argues that had these opinions been granted the appropriate weight at step 3 she would satisfy the B criteria of Listing 12.02. Alternatively, she argues that the ALJ improperly discounted the foregoing reports in assessing plaintiff's residual functional capacity at step 5.

Initially, the court finds no error in the ALJ's evaluation of the medical evidence at step 3. At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. at 120, n.2. However, the burden is on the claimant to present medical findings that show that her impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, as required, the ALJ properly identified Listing 12.02 for organic mental disorders as the relevant listing that compares with plaintiff's cognitive disorder status post traumatic brain injury[5] and thoroughly explained why that impairment, alone or in combination with plaintiff's

---

[5] The ALJ also found that plaintiff's other mental impairments do not meet Listings 12.04, 12.05 or 12.06, and plaintiff has not challenged the ALJ's findings as to any other Listing. Accordingly, this court's analysis focuses solely on whether there is substantial evidence to support the ALJ's finding that plaintiff does not meet Listing 12.02.

other impairments, does not meet or equal that listing. (R. 19-24); see Burnett, 220 F.3d at 120, n.2. In particular, the ALJ determined that plaintiff failed to meet either the "B" or "C" criteria of Listing 12.02.[6] Because Listing 12.02 provides that the "required level of severity for [affective] disorders is met [only] when both the A and B criteria are satisfied, or when the C criteria are met," (emphasis added), the ALJ concluded that plaintiff does not meet the listing.

Plaintiff contends that the report from Dr. Sabo indicating marked or extreme restrictions in numerous areas of work-related mental activities and Dr. Schmidt's estimated impairments of 85% in social functioning and 70% in concentration, persistence and pace are sufficient to establish that plaintiff has marked[7] limitations in the areas of social functioning and concentration, persistence and pace under the B criteria of Listing 12.02. The court finds this contention to be without merit.

Neither Dr. Sabo nor Dr. Schmidt opined in the reports at issue that plaintiff's mental impairments are sufficient to meet or equal Listing 12.02, nor any of the other listed impairments and, in fact, neither was asked to render such an opinion. Indeed, the questionnaire submitted to Dr. Sabo requested his opinion on plaintiff's ability to perform more specific work-related mental activities for purposes of assessing plaintiff's mental residual functional capacity.

---

[6] The "B" criteria under 12.02 provide that the mental impairment must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 12.02B (emphasis added). Here, the ALJ found that plaintiff has mild limitations in activities of daily living; moderate limitations in both social functioning and concentration, persistence or pace; and, one or two episodes of decompensation of extended duration during the relevant time period. (R. 20-23).

[7] Where "marked" is used as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. 12.00C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, so long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively and on a sustained basis." Id.

As the ALJ properly recognized in his decision, the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3." (R. 24). Instead, a mental residual functional capacity assessment is used at steps 4 and 5 and "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B ...." (Id.) Thus, "[a]n assessment of your RFC <u>complements</u> the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an <u>expanded</u> list of work-related capacities that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental disorder." 20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00A. (emphasis added).

Here, the report upon which plaintiff relies is a residual functional capacity assessment and addresses plaintiff's ability to perform more specific work-related mental activities rather than the broad categories found in the B criteria of Listing 12.02, and there is no medical evidence in the record from any treating or non-treating source suggesting that plaintiff has marked or extreme limitations in any of the broad categories necessary to meet those criteria. Accordingly, even if accepted, the residual functional capacity assessment of Dr. Sabo would not support a finding of disabled at step 3 of the sequential evaluation process.

To the extent plaintiff contends that the ALJ improperly rejected the residual functional capacity assessments of Dr. Sabo or the report of Dr. Schmidt, or otherwise improperly evaluated the medical evidence at step 5 of the sequential evaluation process, the court can discern no errors in the ALJ's analysis and is satisfied that his conclusions are supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R.

§§404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. His decision makes clear that he considered all of the relevant evidence from all medical sources, including Dr. Sabo and Dr. Schmidt, and provided a detailed analysis of that evidence, setting forth sufficient explanations as to why he rejected or discounted any such evidence. (R. 26-29). The court finds no error in the ALJ's analysis.

Significantly, the ALJ expressly addressed the opinion of Dr. Sabo that plaintiff has marked or extreme limitations in certain work-related mental activities and adequately explained why he did not give that opinion controlling weight. (R. 18). In particular, the ALJ emphasized that Dr. Sabo's assessment is inconsistent with his own treatment notes, other medical evidence of record, including the reports from Dr. Charles Kennedy, a consultative psychologist, and from a non-examining state reviewing psychologist[8] and also is inconsistent with plaintiff's activities of daily living. The ALJ further noted that Dr. Sabo is not a psychologist or a psychiatrist. (R. 27).

---

[8] Pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(f)(2)(i) and 416.927(f)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(f)(2)(ii) and 416.927(f)(2)(ii); SSR 96-6p.

The ALJ also addressed Dr. Schmidt's opinion and noted that it is based on just one encounter with plaintiff and does not reflect a longitudinal understanding of her condition. (R. 28). In addition, the ALJ found that Dr. Schmidt's report was based largely on plaintiff's own subjective complaints and that Dr. Schmidt himself noted that plaintiff seemed "eager to call attention to her symptoms and problems." (R. 28).

Based upon his review of the <u>entire</u> record, the ALJ concluded that plaintiff's impairments, while severe, do not result in the debilitating limitations set forth by Dr. Sabo or Dr. Schmidt, nor those set forth in a medical sources statement from a Cambria County Mental Health/Mental Retardation provider in November of 2008.[9] Because those opinions are not supported by the objective medical evidence and are inconsistent with other substantial evidence in the record, including their own findings, the ALJ did not err in not giving those opinions controlling, or even significant, weight. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-2p. Significantly, it also must be emphasized that the ALJ did not reject the conclusions from Dr. Sabo, Dr. Schmidt or the Cambria County Mental Health/Mental Retardation provider in their entirety. To the extent their asserted limitations are supported by the objective evidence, the ALJ did accommodate them in his residual functional capacity finding by limiting plaintiff to simple, routine tasks involving no more than simple, short instructions, simple work-related decisions, few work place changes, and no work at a production-rate pace; limiting her to occasional interaction with supervisors and no interaction with the public and coworkers other than incidental contact; and limiting her to work that does not require her to read instructions, write reports, or perform math calculations, such as teller or cashier work. (R. 24).

---

[9] This report, which bears an indecipherable signature, reported that plaintiff has marked limitations in her ability to do several work-related mental functions such as understanding, remembering and carrying out detailed instructions and responding appropriately to changes in a routine work setting. (R. 368-370).

Plaintiff also contends that the ALJ improperly gave minimal weight to several Global Assessment of Functioning ("GAF") scores below 50 set forth in the record and placed improper emphasis on plaintiff's better GAF scores found in the record.[10] The court finds likewise finds no error in the ALJ's analysis of this evidence.

The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §§404.1527(d) and 416.927(d). It is clear from the ALJ's decision that he properly did so here by acknowledging plaintiff's lower scores but adequately explaining why he determined that the higher scores were more consistent with the objective evidence of record. (R. 27)

In sum, the ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff next contends that the ALJ's credibility determination is not supported by substantial evidence. Specifically, plaintiff argues that the ALJ failed to comply with the

---

[10] A GAF rating of 41-50 indicates "serious" symptoms or "serious" impairment in social and occupational functioning. A rating of 51 to 60 indicates "moderate" symptoms or "moderate" difficulty in social or occupational functioning. Id.

appropriate legal standards in concluding that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.[11]

The court finds no error in the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations. As required, in assessing plaintiff's credibility the ALJ considered plaintiff's subjective complaints, but <u>also</u> considered those complaints in light of the medical evidence and all of the other evidence of record. 20 C.F.R. §§404.1529(c) and 416.929(c); <u>see also</u> SSR 96-7p. The ALJ did a thorough job in his decision explaining why plaintiff's allegations of disabling subjective symptoms are not supported by the record, in particular by the objective medical findings or by plaintiff's self-reported activities of daily living. (R. 25-26). Based upon all of the evidence, the ALJ found plaintiff to be not entirely credible as to her allegations of completely debilitating symptoms and limitations.

Again, it is important to note that while the ALJ did not find plaintiff's subjective complaints <u>entirely</u> not credible. Rather, his decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from her impairments are supported by the medical and other evidence, the ALJ accommodated those limitations in his residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its

---

[11] Plaintiff also alleges that the ALJ did not discuss the side effects of her medications. This allegation is belied by the record, as the ALJ explicitly noted that "there is no evidence that [plaintiff] experiences significant side effects from her medications or that her medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness." (R. 26). The court finds no error in the ALJ's consideration of medication side effects. See <u>Burns v. Barnhart</u>, 312 F.3d 112, 131 (3d Cir. 2002)(ALJ's decision to discount allegations of side effects supported by substantial evidence where record contained no medical evidence as to any serious functional limitations arising from any side effects).

own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and the court is satisfied that it is.

Plaintiff's final argument is that the ALJ's residual functional capacity finding and resultant hypothetical to the vocational expert were incomplete because of the ALJ's alleged errors in weighing the medical evidence and plaintiff's credibility. However, as explained above, the ALJ properly evaluated the medical evidence and plaintiff's credibility under the appropriate standards. Moreover, it is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence. (R. 24-29). The court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision and that the hypothetical to the vocational expert based on that residual functional capacity finding adequately accounts for all of plaintiff's limitations that are supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record).

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

AO 72
(Rev. 8/82)

- 12 -

cc: Jaya A. Shurtliff, Esq.
Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller
6000 N. Bailey Ave., Suite 1A
Amherst, NY 14226

Stephanie L. Haines
Assistant U.S. Attorney
319 Washington Street
Room 224, Penn Traffic Building
Johnstown, PA 15901